THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VALENTÍN SAENZ FORTEZA, JULIÁN SAENZ FORTEZA, and RAFAEL MURILLO SALLS, Defendants and Appellants.

No. CR-70-83. Decided October 25, 1972.

*Yamil Galib Frangie* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: The three appellants were convicted by a unanimous jury of the offense of grand larceny. Sections 426 and 428 of the Penal Code, 33 L.P.R.A. §§ 1681 and 1683. On appeal they assign the following six errors:

1. The prosecuting attorney incurred improper conduct which injured defendants' right to a fair and impartial trial.

2. The trial court erred in transmitting only partially a special instruction requested by the defense with regard

to the evidence of good character.

3. The trial court erred in denying the petition based on Rule 135 of the Rules of Criminal Procedure, to order defendants' acquittal.

4. The judgment is not supported by the evidence and is contrary to law.

5. The judgment is the result of evident error in the weighing of the evidence.

6. The trial court erred in denying the petition for new trial.

The facts may be summarized as follows. Francisco Muñoz Ortiz, a pharmacist since 1937, has a drugstore on Comercio Street in the town of Juana Díaz. At the time of the events the pharmacist, his wife, and an employee in charge of cleaning, took care of said pharmacy. The employee left his work at six in the afternoon and the lady at six thirty. The owner used to leave at 7:00 p.m. since he remained to balance the cash.

On November 7, 1967, at fifteen minutes to seven at night the owner was already alone in the drugstore. Two of the three doors of the establishment were closed; one remained open. Awhile before the owner had telephoned his daughter so that she would come to pick him up in the automobile. The daughter went and parked her vehicle in front of the establishment, in front of one of the doors which was closed and she remained there waiting for her father.

At about seven o'clock at night the pharmacist had finished and was getting ready to leave with a bag of cash money, which contained $3,500 in cash and $500 in checks. At that very moment Julián Saenz Forteza, one of the appellants, entered the drugstore and asked for two tablets of an analgesic called "Zactirín." While the pharmacist was waiting on Julián, Valentín Saenz Forteza entered followed by Rafael Murillo Salls, the other two appellants. They had left a yellow and black topped Camaro car, with the motor running, parked

in front of the drugstore. Murillo asked for "Tetrex." At that time the three appellants were standing in front of the counter. In order to deliver what they had asked for the pharmacist placed the bag of money on top of a desk which was at about thirty inches behind the counter. The pharmacist went to the back of the establishment to look for the capsules. He returned almost immediately with a bottle of capsules of "Tetrex APC" and Murillo told him that he did not want those but just Tetrex. The pharmacist returned to the back of the business looking for the capsules. He was back there for some minutes and when he came out, to his surprise, he found that the three individuals had disappeared and that the bag of money had disappeared also.

The pharmacist went out and noticed that the Camaro automobile was not there either. He immediately asked his daughter whether she had taken the license plate number of said car. She said that she had not, but that a short while before a friend of hers called Nilsa Marrero had passed thereby and had talked with one of the three individuals. The pharmacist's daughter telephoned Nilsa Marrero and obtained from her the names and addresses of the individuals. The pharmacist and his daughter went to the police station and reported what had happened.

1. First error assigned: Statements of the prosecuting attorney. This assignment involves the following four incidents:

(a) In the cross-examination of the witness Bernard Kantrowitz, who testified with regard to Julián's good character, the prosecuting attorney asked him for the names of the persons who informed him about that particular and after the witness mentioned some names the prosecuting attorney asked him:

"Now, you, for example, have you received any information, if any, let's say, from prosecuting attorney Limeres, who is a resident of 'La Rambla' Development?

No sir.

Have you received any information about the character of this Mr. Saenz from prosecuting attorney Martínez, who lives in La Rambla?" Tr. Ev. p. 130.

The witness did not answer this last question because the defense raised objection to it. The court pointed out that the prosecuting attorney could ask said question with regard to the neighbors of codefendant Julián Saenz. Later the prosecuting attorney asked the witness whether he had received information about Julián's character from any neighbor close to the latter to which the witness answered that he did not, because he did not know where said person lived.

(b) The second incident is connected with witness Juan Luis Oliver, who is a friend of Julián and Valentín. On cross-examination he testified "I have noticed that when we go to places, they accept them in the places where we go, they do not turn them away from the places, and they have friends everywhere in town." Later the prosecuting attorney asked him: "And they go with you?" The witness answered: "Yes, sir." Then the prosecuting attorney said: "Coming from you I don't have the least doubt." The defense raised objection to this comment of the prosecuting attorney and the court sustained the objection. See Tr. Ev. pp. 138–139.

(c) As to the third incident we do not have the direct quotation of the words of the prosecuting attorney objected to by the defense, because they were said during the course of his argument and the arguments are not transcribed. The explanation which appears from the briefs and from the transcript is the following. When Valentín Saenz was testifying he stated that when traveling from Ponce to San Juan he prefers the Aibonito route, because, among other things, on that route there are no policemen. On cross-examination the prosecuting attorney cross-examined about that and Valentín said: "because many times you go at 35 miles and increase to 45 and they take you thereat, and they catch you, and one

lives on his license." It seems that in his argument the prosecuting attorney commented those declarations of codefendant Valentín and at that moment the counsel for the defense interrupted him and stated that "the prosecuting attorney has no authority whatsoever to say that a defendant has the intent to commit an offense." Then the following dialogue took place:

"The Court: The evidence does not reveal that.

Prosecuting Attorney: To commit the traffic offense.

The Court: The evidence does not reveal sufficient elements for the prosecuting attorney to conclude in the manner in which he did.

Prosecuting Attorney: Not offenses, but traffic offenses.

Mr. Galib: Of lesser offenses.

The Court: Not up to this moment. That is, the fact that he came by Aibonito because of the police, that is, indeed." Tr. Ev. pp. 238–239.

(d) Also with regard to this incident we do not have the exact words which the prosecuting attorney said, because allegedly he said them in his argument. About said particular in the record there is only an expression of the defense in the sense that the prosecuting attorney in his argument "talked of the fact that it was very easy to find witnesses who would appear to talk about the good character of a person and very difficult to find persons who would appear to talk of the bad character of a defendant."

Let us analyze briefly those four incidents. The first one is neutral. It showed, on the one hand, that the witness had not received information adverse to appellant from prosecuting attorneys Limeres and Martínez and, on the other hand, that there did not exist adverse information which the prosecuting attorney deemed convenient to present for, as the defense informs us, those two prosecuting attorneys were in court when those statements were made.

As to the second incident the expression of the prosecuting attorney to the witness "Coming from you I don't have the

least doubt" is by all means improper. It was not necessary nor useful and it is not good form. However, that lack of form was corrected by the court, which immediately sustained the objection of the defense saying "Objection sustained as to the comment of the prosecuting attorney." As to the psychological value of the incident, it was rather negative for the prosecuting attorney and positive for the defense.

■ As to the third incident, any intimation which the prosecuting attorney would have made in his argument in commenting Valentín's testimony to the effect that he preferred the Aibonito route because there were no policemen there was sufficiently cured by the court when it said, "The evidence does not reveal that." See the dialogue which ensued with regard to this incident and which we have copied above. In any event, that matter was brought by Valentín himself and in so doing he opened the doors to the inferences which could be drawn from the same. *People* v. *Rivera*, 98 P.R.R. 159, 164 (1969). Also any intimation made by the prosecuting attorney in his argument about that particular or about any other was duly weighed by the court, for the benefit of the jury, since the court in its instructions clearly charged the jury in the sense that the arguments of the prosecuting attorney and of the defense do not constitute evidence but that they are the form and manner in which they weigh and interpret the evidence presented, with the intention of convincing them.

The fourth incident refers, as we stated before, to a comment of the prosecuting attorney about the alleged facility to get testimonies of the good character of a defendant and the difficulty there exists to get testimonies on bad character. We do not think that this comment adds or takes away anything. The members of the jury are adults and they know that as a general rule people are reluctant to testify under oath in an adverse manner about other people when they are not personally interested in the cases. As we said upon discussing

the third incident, with the aforementioned instruction of the court about the arguments of the prosecuting attorney and of the defense, the comment was rendered worthless.

 Though it is preferable, and it should be the rule, that the prosecuting attorneys and counsels for the defense present their evidence and carry out their cross-examination as ordered by the rules and without making intimations and comments which are not those strictly permissible in the light of the evidence, it is not justified to reverse for lack of good legal form when the rights of the parties have not been substantially injured. The incidents which we have recited, neither taken isolatedly nor as a whole, justify a reversal in the instant case. We cannot assume that incidents of that kind preclude the jury from rendering an impartial verdict. *People* v. *Hernández Santiago*, 97 P.R.R. 509, 518 (1969) ; *People* v. *Rivera*, 83 P.R.R. 452, 464 (1961).

2. Second assignment of error: Instructions to the jury. The defense requested the court to charge the jury with the following special instructions with regard to the evidence of character:

"Evidence of the character of a defendant may be brought before the jury, only in those cases where the defendant chooses to pass judgment on his character, through evidence in the sense that he enjoys good character. If he does so, the prosecuting attorney then is entitled to present evidence of defendant's bad character. In this case the defendants in presenting evidence of their good character opened to discussion the question concerning their character and the prosecuting attorney therefor could have brought evidence of bad character if he had it and if he wished to do so."

The court transmitted the first sentence of that paragraph and omitted the rest. After reading the aforementioned sentence the court continued giving its general instructions. But on two subsequent occasions the court asked whether there was any objection to the instructions given by it or whether

the parties were interested in any other instruction, stating the second time "before the jury withdraws?" On both occasions the defense stated that it did not have any instruction to request. Tr. Ev. pp. 271 and 275. It was after the jury withdrew that the defense stated that only part of the instruction it requested had been given.

■■ Rule 137 of the Rules of Criminal Procedure, after providing that the parties may request certain instructions, prescribes that "Neither party may assign as error any portion of the instructions *or omission therein* unless objection is raised thereto or additional instructions are requested before the jury retires to deliberate, stating clearly the grounds of challenge or of its request." (Italics ours.) We see then, that the contention was untimely. In any event, in order that a refusal to give instructions requested may give rise to a reversal the instruction should be correct, the point should not have been covered in other instructions and the thing omitted should refer to a vital point in the case so that the failure to give it seriously deprives the defendant of an effective defense. *People* v. *Negrón Vélez*, 96 P.R.R. 408, 420 (1968). The part which was omitted from the special instructions requested in the instant case does not refer to a vital point of the same and the failure to give it did not deprive the defendants of an effective defense. In view of the evidence for the prosecution contained in a clear and probable testimony it was incumbent upon the jury to give or not to give credit to it. Obviously, by unanimity, it gave credit to said evidence for the prosecution.

■■ 3, 4, and 5. The third, fourth, and fifth assignments of error refer to the sufficiency and weighing of the evidence. In the light of the evidence for the prosecution, there is basis in the record to sustain the conviction. It was the duty of the jury to settle the conflict in the evidence and to give, or refuse to give, credibility to the witnesses. We find no ground in the

record to disturb the determination unanimously made by the jury about that particular. Said errors were not committed.

■ 6. Denial of petition for a new trial. A hearing concerning said petition was held in the trial court. The defense and the prosecuting attorney argued. In its brief before this Court the defense submits this assignment on the arguments adduced at the hearing in the trial court and on the foregoing contentions set forth in its brief. The motion for new trial was grounded on the provisions of Rule 188 of the Rules of Criminal Procedure subdivisions (c), (d4), (d5), and (f). We have considered and discussed those contentions previously in this opinion. As is known, an order denying a motion for new trial is not appealable because it is not a final judgment in a criminal case and it is only reviewable through certiorari. Section 14(a) of the Judiciary Act, Act No. 11 of July 24, 1952, as amended, 4 L.P.R.A. § 37(a), with regard to Rule 193 of the Rules of Criminal Procedure, *People* v. *Matos Rodríguez*, 91 P.R.R. 616, 621 (1965). But as we have set forth, not even the examination of its grounds convinces us to the effect that error was committed in denying it.

The errors assigned not having been committed, the judgments appealed from will be affirmed.